Filed 6/28/21  Marriage of McAuley CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re the Marriage of AMEENAH and JEFFERY ALLEN MCAULEY. | C090504 |
| AMEENAH SALAAM, | (Super. Ct. No. 12FL07094) |
| Appellant, | |
| v. | |
| JEFFERY ALLEN MCAULEY, | |
| Respondent. | |

Ameenah Salaam (mother) appeals from an order changing primary physical custody of her minor son, A., from mother, in Maryland, to father, Jeffery Allen McAuley (father), in California.  Although mother had been the child's primary physical caretaker since birth, the trial court decided a change of custody was in A.'s best interest after finding mother had engaged in a continuous course of conduct designed to frustrate father's visitation rights and alienate A. from father.

1

On appeal, mother argues the trial court erred by (1) conducting a hearing without proper service of father's initial request for order, (2) granting relief in excess of what was requested in the initial request for order, (3) rendering a decision without considering all the relevant facts, (4) improperly excluding relevant evidence, and (5) failing to properly weigh the evidence adduced at trial.[1]  Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Mother and father were married in July 2011, and separated in December 2012. They had one son, A., born in September 2012.  Father stipulated to a five-year domestic violence restraining order in April 2013, which expired in April 2018.  After dissolution, mother and father were awarded joint legal custody of A.  Mother was given sole physical custody, with father having visitation rights three days a week and during specified holidays.

In November 2017, mother filed a request for an order allowing her to relocate to Virginia.  In December 2017, over father's objection, the court granted the "move-away" request and awarded mother sole legal custody of A.  Father was awarded visitation/parenting time with A. in California during the month of July, Thanksgiving holidays in odd-numbered years, winter break in even-numbered years, and spring break every year.  The court also ordered that each parent shall have the right to "reasonable Facetime or Skype communication . . . when [A.] is with the other parent."

As ordered, A. visited father in July of 2018.  Around the same time, mother moved from Virginia to Maryland without seeking court approval.  Mother told father about her move, but would not disclose her new address.

Father alleged that after A.'s summer visit, his parenting time with A. was significantly reduced.  He also claimed that he was no longer able to speak with A. on a

---

[1]     Although father did not file a respondent's brief, we reverse only if prejudicial error is found.  (*Lee v. Wells Fargo Bank* (2001) 88 Cal.App.4th 1187, 1192, fn. 7.)

regular basis. Video calls failed because A.'s tablet always was set to "do not disturb." Father would sit and wait for hours for A. to call him. Sometimes the phone would ring only once and, if father missed the call, A. would not call again.

Father claimed that he would ask mother to have A. call, but mother would tell him A. was busy or did not want to call. Mother told him that she was unwilling to force A. to call if he did not want to. As a result, father claimed he was only able to speak to his son approximately seven or eight times between August and December 2018. Father produced a call log to support his claim.

On November 30, 2018, a few weeks before A. was scheduled to fly to California for winter break, mother e-mailed father stating that A. would no longer be allowed to visit or communicate with him in any way. Mother explained to father, for the first time, that "[u]pon [A.'s] return home from his [July 2018] visit . . . , A. told me on August 7th [that] 'Daddy pulled my penis and made it bleed.' " In response, father sent mother a text message calling the accusation "ridiculous" and accusing her of deliberately interfering with his relationship with A.

*Father's requests for court orders*

On December 19, 2018, father filed an ex parte request for an emergency order compelling mother to (1) comply with the previously established visitation schedule, (2) pay for the next visit and split the cost of future visits equally, and (3) ensure A. has at least a 15-minute visit with father every two days. Father also asked the court to reinstate joint legal custody and order mother to provide him with A.'s school and medical information.

At the December 19, 2018 hearing on the ex parte request, the court referred the parties to Family Court Services for mediation, temporarily halted father's visitation and parenting time, and set a further hearing on February 5, 2019.

Both parties appeared for the February 5 hearing. At the hearing, the court heard father's explanation of the alleged sexual abuse. According to father, A. came into father

3

and his fiancée's bedroom one night and said that his " 'pee pee hurts.' " Father asked A. to pull down his "pull-ups" training pants, which A. wore because of a bed-wetting problem, noticed that the pull-up was wet, and saw that A. had mild redness on the tip of his penis. Father cleaned up A., applied ointment, and told A. not to wear the pull-ups for the next few days until the soreness went away.

The court learned that mother had arranged for A. to be interviewed at the Children's National Hospital, Child and Adolescent Protection Center (Children's National), in August 2018. The report from that interview stated: " 'Patient made no direct disclosure about anyone touching his body in a way that made him feel uncomfortable or that he considered to be inappropriate.' "

Several weeks after the Children's National interview, mother arranged for A. to be interviewed by Maryland police. A recording of that interview was forwarded to the Sacramento Sheriff's Department, and a detective was assigned to review the recorded interview. The detective concluded there was insufficient evidence of sexual abuse, and declined to open a criminal investigation. Both Maryland and Sacramento Child Protective Services (CPS) also declined to take action.

The court, unpersuaded by mother's sexual abuse allegations, restored father's visitation/parenting time and ordered mother to pay the transportation costs for A.'s upcoming 2019 spring break visit. In addition, mother was to allow father to have video calls with A. on Mondays, Wednesdays, and Fridays, and ordered both parents to "exert every effort to maintain free access and unhampered contact" between A. and the other parent. The court also ordered, "[s]hould either parent engage in conduct which undermines the shared custody arrangement, it shall be considered that the parent is not acting in the best interests of the child and such non-conformance may be the grounds for modification of this order." At mother's request, the matter was set for trial on June 13, 2019.

4

After the February 5 hearing, mother informed father that despite the court's orders, she would not allow A. to visit during spring break due to the alleged sexual abuse. Thus, on February 22, 2019, father filed another ex parte request seeking an order to show cause regarding contempt for violating the February 5 order, sanctions, costs and attorney fees. Although father did not check the "child custody" box on the form, father checked the box indicating that he was requesting an order relating to "physical custody," and explained that "[t]he law allows for changing primary physical custody away from the parent who refuses to comply with visitation orders."

At the February 22 ex parte hearing, mother told the court that she could not afford to pay for A.'s spring break travel and did not think A. should have to go because the sexual abuse allegations had not been (in her mind) adequately investigated. The court did not change its prior order, and set the matter for further hearing on March 26.

On or about March 15, 2019, mother applied for and was granted a 15-day temporary protective order (TPO) by a Maryland court. Relying on the Maryland TPO, mother refused to allow father any visitation/parenting time with A. In response, father again requested emergency relief, seeking an order to show cause for contempt, sanctions and attorney fees, as well as sole physical custody of A. The court set the matter for hearing on March 26, the same day as the continued hearing on the prior request for order.

At the March 26 hearing, mother promised she would follow the prior orders and deliver A. to father for his spring break visit. At the time, mother intended to seek an extension of the Maryland TPO, but she concealed this fact from the court.[2] Mother later defended the nondisclosure by claiming she did not know whether the extension would be granted.

---

[2] Mother also filed a request for an order changing jurisdiction of the case from California to Maryland, which was denied.

On March 29, the Maryland court granted mother's request to extend the TPO through April 30, 2019. Mother then relied on the Maryland TPO to deny A.'s spring break visit with father.

In early April, father filed yet another request for an emergency order, seeking sole physical custody of A., an order to show cause for contempt, sanctions, and attorney fees. In response, the court slightly increased father's parenting time and ordered mother to pay the transportation costs for A.'s summer visit.[3]

*Arguments at trial*

Trial was held on June 13, and July 10-11, 2019. Mother's position at trial was that father sexually abused A. Mother testified that shortly after A. returned from visiting father in July 2018, she took A. to his pediatrician, and then to a therapist at Children's National to be interviewed about the alleged abuse. She contacted law enforcement and child protection agencies in California and Maryland, but none were willing to take action against father. Mother testified that she was not satisfied with the results of the investigations into the alleged sexual abuse and believed A. was not safe around father.

Mother denied that she intentionally frustrated father's visitation rights. She claimed that father received regular calls from A. prior to the alleged abuse. She argued that her actions after the alleged abuse were taken to protect A.'s health, safety, and welfare.

Mother admitted that she violated California court orders to produce A. for the 2019 spring break visit. She testified that she believed the Maryland TPO superseded the California orders, even though the California court had told her otherwise.

---

[3]  The court also ordered mother to pay $1,500 in attorney fees, which was in addition to fees awarded at the March 26 hearing. These fee orders are beyond the scope of this appeal. (*In re Marriage of Weiss* (1996) 42 Cal.App.4th 106, 119; *In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1311.)

Mother also admitted that there were many missed calls with father. She testified that it was not her obligation to ensure that A. called father or to have A. return missed calls from father. Mother left it up to A. If A. wanted to call, he would call; if he did not want to call, she did not make him call. Mother claimed that A. did not want to talk with father due to the alleged abuse.

Mother argued it would not be in A.'s best interest to change custody to father. In addition to the alleged sexual abuse, mother argued that father had posttraumatic stress disorder (PTSD) and a history that includes "home drinking" and a domestic violence restraining order.[4] In contrast, she argued that she has been with A. since birth and has provided consistency, continuity, and stability. Mother asked for sole legal and physical custody of A., while allowing father only limited, supervised visits.

In her case-in-chief, mother called Family Court Services counselor Marie Sims (Sims). Sims testified that after interviewing mother and father, reviewing the Children's National report, and speaking to the Sacramento Sheriff's Department, she concluded the sexual abuse allegations could not be substantiated.

Sims testified that it is detrimental for a child to have no contact with the noncustodial parent and that a parent who prevents contact with the other parent is not acting in the best interest of the child. But Sims also testified that a sudden change in custody is hard on a child and, before ordering a change in custody based on interference with visitation rights, she first would want to work with the custodial parent to try to help the parent understand how important it is to facilitate contact with the other parent. Depending on the circumstances, she testified she also might recommend a more "in-

---

[4]     Father denied current treatment for PTSD. A 2014 forensic evaluation indicated that father stopped drinking in February 2013. Father testified that he was tested for alcohol as part of the domestic violence restraining order and that he never had a positive test.

7

depth" evaluation by a licensed private mental health professional to determine why visitation was being blocked.

Father's position at trial was that the sexual abuse allegation was part of a broader effort by mother to alienate him from his son.

Father called his fiancée, Megan Daniel (Daniel), who had lived with father for four years and knew A. well. Daniel testified that she had acted as a stepmother to A. and had a good relationship with him. Daniel is employed as a social worker for CPS. She deals with allegations of sexual abuse and has been trained to recognize signs of sexual abuse. She testified it is not uncommon for parents to use allegations of sexual abuse to gain an advantage in custody cases.

With regard to the sexual abuse allegations against father, Daniel testified there was nothing out of the ordinary during A.'s July 2018 visit. She recalled an incident in which A. came into their bedroom and said, "[M]y penis hurts." Father pulled down A.'s pull-up training pants and they saw that A. had redness on the tip of his penis that looked like diaper rash. Father told A. not to wear the pull-ups for a few days to let the area heal, and that was the end of it.

Daniel testified that not having consistent contact with father had been traumatic for A. She recalled a call in 2019 when A., who had not spoken to his father for many months, asked father, "[D]id you miss me? Did you forget about me?" On cross-examination, Daniel admitted it also could be "traumatic" to remove A. from mother's physical custody.

Coleman Daniel (Mr. Daniel), Megan Daniel's 32-year-old brother, also testified for father. Mr. Daniel testified that he lived in the home during the summer of 2018 and recalled the incident with A. His account was consistent with his sister's. Mr. Daniel testified that A.'s demeanor did not change after the incident and that A. was sad to leave at the end of July.

Father also called Detective Campoy from the Sacramento Sheriff's Department, Child Abuse Bureau, to testify. Detective Campoy reviewed the written reports and watched the recorded interview of A. conducted by Maryland police. He testified that the victim did not make a proper disclosure of any criminal conduct and there was insufficient evidence to warrant an investigation in Sacramento. In his opinion, it was extremely unlikely that sexual abuse occurred.

Father testified on his own behalf. He denied sexual abuse of A. and asserted that mother had been trying to exclude him from A.'s life since shortly after A. was born. Father testified that mother had on more than one occasion asked him to relinquish parental rights. Mother also told him that if he requested shared physical custody, she would move away, which is what happened.

Father testified that he disagreed with the merits of the 2013 domestic violence restraining order, but stipulated to it because he did not understand its significance and did not want to speak to mother anyway. After the restraining order was issued, mother threatened to send a copy to his employer unless father relinquished his parental rights. When father refused, mother followed through on her threat, and father lost his job. Mother did this more than once and, as a result, father has not been employed full time since 2013. Father testified that if he received custody, he would be available to care for A., as his work is sporadic and occurs primarily in the evenings.

Father acknowledged that mother is a good mother, but claimed she had deliberately interfered with his visitation rights and tried to alienate A. from him. He argued that mother not only does not care whether he has a meaningful relationship with his son, she has actively sought to diminish and destroy the relationship. Father testified that after mother and A. moved to the east coast, mother gave him very little information about his son and he had not seen and had very little contact with A. for approximately 11 months.

Father argued that mother's sabotage of his visitation rights justified reversing the custody and visitation order to give him sole physical custody of A., with mother having parenting time on specified holidays and school breaks. He argued such relief was necessary due to mother's history of violating court orders with which she does not agree.

Father argued that giving him sole physical custody would be in the child's best interest because, among other reasons, A. would have a better living situation in a stable home with two parents and access to stepsiblings, would attend a better school, and would have no need for daycare. Father argued that, unlike mother, he would comply with all court orders and facilitate contact between A. and mother.

*Trial court's ruling*

The trial court found the testimony of Detective Campoy, Ms. Daniel, Mr. Daniel, Sims, and (for the most part) father to be balanced and credible. In contrast, it found mother's testimony to be self-serving and not credible. The court found that mother has consistently and intentionally frustrated father's visitation rights, in violation of court custody orders. The court found that mother had no interest in allowing A. to have a relationship with father, that she "manipulated" court processes to defeat father's visitation rights, and that she is only willing to follow court orders when she agrees with them.

The court found mother's conduct to be "unacceptable" and "detrimental" to A. Considering all the facts and circumstances, and bearing in mind the importance of preserving parental relationships, the trial court concluded that it was in the best interest of A. to modify the custody arrangement and give father joint legal and sole physical custody of A., with mother having visitation/parenting time on specified holidays and school breaks.

## DISCUSSION

### I

### *Service of the Initial Request for Order*

Mother argues the trial court's order must be overturned due to father's failure to properly serve the December 2018 request for order. She argues that rules 5.92 and 5.167 of the California Rules of Court required father to personally serve the papers supporting the request for order "at the first reasonable opportunity before the hearing." (Cal. Rules of Court, rules 5.167(a) & 5.92(f).) She contends that father violated these rules because she did not receive the papers supporting the request until February 8, 2019, at the earliest. She contends this prejudiced her ability to respond to father's request and to participate in the mediation.

We conclude that mother's challenge is moot because the February 5, 2019 ruling on father's initial request for order is no longer in effect, having been superseded by later requests for orders and the eventual August 2, 2019 decision and order after trial, which is the subject of this appeal. (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 566; see also *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1378.)

### II

### *Granting Relief in Excess of the Request for Order*

Mother contends that the trial court abused its discretion because it granted relief exceeding what father requested in his request for order. In particular, mother complains that the trial court ordered a change of custody from mother to father even though custody was not "in dispute" until father "verbally" requested it on "the first day of trial." The record belies her claim.

Although mother is correct that father's *initial* request for order only sought to enforce father's visitation rights, father's later requests for orders explicitly requested that he be granted sole physical custody of A. And mother had actual notice father was requesting a change in custody well before trial. In her petition for the Maryland TPO,

11

filed in March 2019, mother expressly acknowledged that the "issue of visitation and custody is set for trial in late June 2019." There is nothing in mother's trial testimony to suggest she was unfairly surprised when father requested physical custody in his opening statement. In sum, the evidence shows that mother had notice that father was requesting a change of custody. We therefore reject her claim that the trial court exceeded its authority when it granted that request.[5]

### III

### *Evidentiary Rulings*

Mother contends the trial court erred in excluding evidence relevant to the issue of custody. In particular, she contends the court improperly excluded (1) a recorded video of A. refusing to call father, (2) a recorded video showing "verbal abuse" of father towards mother, and (3) a copy of the Sacramento CPS " 'evaluated out' " report of child abuse. Mother contends the court improperly excluded the first two items because the transcripts were not certified, and improperly excluded the CPS report on hearsay grounds.

We deem mother's contentions to be forfeited because she has not supported them with adequate citations to legal authority or the record. (*Fernandes v. Singh* (2017) 16 Cal.App.5th 932, 942-943; Cal. Rules of Court, rule 8.204(a)(1)(B) & (C).) We are not required to search the record to determine whether it contains support for her contentions. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545.)

In any event, mother's contentions appear to lack merit. As far as we can ascertain, both the CPS report and the recorded calls were properly excluded, both on

---

[5] Mother also argues that the court abused its discretion by ordering her to post a $5,000 bond, instead of the $3,000 bond requested in the December 2018 request for order. Because she fails to cite any legal authority to support her contention, we deem the argument forfeited.

hearsay grounds and because there was no evidence that the call participants consented to the recording. (Pen. Code, § 632, subd. (d); *Kearney v. Salomon Smith Barney, Inc*. (2006) 39 Cal.4th 95, 117-120 [Penal Code section 632 applies when the communication takes place in part in California and in part in another state].)[6]

IV

*Failure to Consider All Relevant Evidence*

Mother further contends the trial court abused its discretion by failing to consider all the facts relevant to a determination of what was in the best interest of A. We are unpersuaded.

A.     *Legal Background*

The focus of California's statutory scheme governing child custody and visitation determinations is the " 'best interest of the child.' " (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955 (*Brown*); Fam. Code, § 3040; see also Fam. Code, §§ 3011, 3020.) When making an initial custody determination, a trial court has broad discretion to determine what arrangement serves the child's best interest. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 34 (*Burgess*).) It must consider all relevant factors, including the health, safety, and welfare of the child; any history of abuse by one parent against the child or the other parent; and the nature and amount of the child's contact with the parents. (*Brown, supra*, 37 Cal.4th at pp. 955-956.)

Once a particular custody arrangement is deemed to be in a child's best interest, the " 'paramount need for continuity and stability in custody arrangements . . . weigh

---

[6]     Although mother is correct that under rule 2.1040(b)(1) of the California Rules of Court, the transcripts were not required to be certified, mother did not object to the certification ruling at trial, thereby forfeiting the issue. (*Smith v. County of Los Angeles* (1989) 214 Cal.App.3d 266, 284 [questions relating to the admissibility of evidence will not be reviewed on appeal absent a specific and timely objection at the trial on the ground sought to be urged on appeal].)

13

heavily in favor of maintaining' that custody arrangement." (*Brown, supra*, 37 Cal.4th at p. 956.) Thus, a party seeking to modify a permanent custody order can do so only if he or she demonstrates a significant change of circumstances justifying the modification. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 256.)

This "changed circumstance rule" is not a different test, but a "variation on the best interest standard . . . that the trial court must apply when a parent seeks modification of a final judicial custody determination." (*Brown, supra*, 37 Cal.4th at p. 956.) The rule protects the interest in stable custody arrangements by preserving the established mode of custody unless some significant change of circumstances indicates that a different custody arrangement would be in the child's best interest. (*Ibid*.; *Montenegro v. Diaz, supra*, 26 Cal.4th at p. 256.)

Our Supreme Court has considered the changed circumstances rule in the context of a custodial parent's request to move a child to a distant location (sometimes called a "move-away" case). (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072 (*LaMusga*).) The court held that the mere fact that a custodial parent proposes to move the child does not by itself constitute " 'changed circumstances' " requiring a reevaluation of an existing custody order. (*LaMusga, supra*, 32 Cal.4th at p. 1096.) Thus, in a typical move-away case in which the custodial parent seeks to relocate, the noncustodial parent has the initial burden to show the move will cause some detriment to the child. (*Brown, supra*, 37 Cal.4th at pp. 959-960; accord, *LaMusga*, at p. 1096.) If the noncustodial parent makes the threshold showing of detriment, warranting reevaluation of the existing custody arrangement, the trial court is then obligated to "perform the delicate and difficult task of determining whether a change in custody is in the best interests of the [child]." (*LaMusga*, at p. 1078; accord, *Brown, supra*, 37 Cal.4th at pp. 960.)

Among the factors a court ordinarily should consider when deciding whether to modify custody in light of a proposed move are: the child's interest in stability and continuity in the custodial arrangement; the distance of the move; the child's age; the

14

child's relationship with both parents; the relationship between the parents, including their willingness to put the child's interests above their own; the child's wishes (if the child is mature enough for this inquiry to be appropriate); the reasons for the proposed move; and the extent to which the parents currently share custody. (*LaMusga, supra*, 32 Cal.4th at p. 1101; accord, *Brown, supra*, 37 Cal.4th at pp. 960-961.)

The California Supreme Court has clarified that the noncustodial parent in a typical move-away case has no burden to prove that a change of custody is " 'essential' " to prevent detriment to the child from the planned move.[7] (*LaMusga, supra*, 32 Cal.4th at pp. 1078, 1097-1098.) After overcoming the initial hurdle of showing the proposed relocation would cause detriment to the child, the noncustodial parent's burden instead is to show that, under all the circumstances, a change of custody would be in the child's best interest. (*Ibid.*; *Brown, supra*, 37 Cal.4th at p. 956; *Burgess, supra*, 13 Cal.4th at p. 37; *Speelman v. Superior Court* (1983) 152 Cal.App.3d 124, 129; see also *Burchard v. Garay* (1986) 42 Cal.3d 531, 535-536 [under policy favoring stable custodial arrangements, the noncustodial parent has the burden to show a change is in the child's best interest].)

Here, unlike a typical move-away case, it is the noncustodial parent requesting a change of custody that would require the child to relocate. Nevertheless, we conclude that the standard is the same as any other change of custody case involving a proposed relocation. The noncustodial parent must satisfy an initial burden by showing that, due to

---

[7]    The relevant language, from its earlier ruling in *Burgess, supra*, 13 Cal.4th at page 38, stated that a change of custody in a move-away case is justified "only if, as a result of relocation with that parent, the child will suffer detriment rendering it ' "essential or expedient for the welfare of the child that there be a change." ' " In *LaMusga*, the California Supreme Court clarified that the paramount principle in custody cases is the welfare and best interest of the child, and held that a change in custody is " 'essential or expedient' " within the meaning of *Burgess* if it is in the best interest of the child. (*LaMusga, supra*, 32 Cal.4th at pp. 1097-1098.)

15

a significant change of circumstances, there will be detriment to the child unless custody is changed. Once the noncustodial parent meets this threshold showing of detriment, the court must exercise its discretion to decide whether, in light of the change in circumstances and all other relevant factors (health, safety, and welfare of the child, any history of abuse, the child's age, community ties, etc.), a change of custody is in the child's best interest. (*LaMusga, supra*, 32 Cal.4th at pp. 1078, 1089, 1095, 1101; *Brown, supra*, 37 Cal.4th at pp. 960-961.)

Although the need for continuity and stability weighs heavily in favor of existing custody arrangements, courts enjoy " 'wide discretion' to order a custody change based upon a showing of detriment . . . if such a change is in the best interest of the child in light of all the relevant factors." (*Brown, supra*, 37 Cal.4th at p. 961.) We review the trial court's order for an abuse of discretion. (*Burgess, supra*, 13 Cal.4th at p. 32.)

Frustration of the other parent's visitation rights is a circumstance that has been held to justify a change in custody. (*Brown, supra*, 37 Cal.4th at p. 960, citing *LaMusga, supra*, 32 Cal.4th at pp. 1083-1085; *Speelman v. Superior Court, supra*, 152 Cal.App.3d at p. 132; *In re Marriage of Wood* (1983) 141 Cal.App.3d 671, 682, questioned on unrelated grounds in *In re Marriage of S.* (1985) 171 Cal.App.3d 738, 749, *In re Marriage of Ciganovich* (1976) 61 Cal.App.3d 289, 293-294; see also *Moffat v. Moffat* (1980) 27 Cal.3d 645, 652 [deliberate sabotage of visitation rights furnishes ground for custody modification and is a significant factor bearing on the fitness of the custodial parent].)

B.    *Analysis*

In this case, the trial court heard testimony from several witnesses about the importance of maintaining stability and continuity in A.'s custody arrangement. Nevertheless, the trial court impliedly found that there had been a significant change of circumstances warranting a change of custody based on mother's frustration of father's visitation rights and attempts to alienate A. from father, which the court found to be

16

detrimental to the child. After considering all the evidence, including the evidence about A.'s proposed living situation in California and father's pledge to ensure A. maintains his relationship with mother, the court concluded that giving father physical custody would be in the child's best interest.

Mother contends the trial court abused its discretion by failing to consider all the facts relevant to a determination of what was in A.'s best interest. In particular, she contends the court failed to consider (1) how disrupting the existing custodial arrangement might affect A.'s mental and emotional stability; (2) whether father's PTSD presents safety and welfare concerns for the child; (3) father's (alleged) sexual abuse of A. in July 2018; and (4) father's history of domestic violence and alcohol abuse.

Before turning to the substance of her claim, we return to the issue of mother's failure to comply with the rules of appellate procedure, namely, her failure to provide any record citations in the argument portion of her brief. Rule 8.204 of the California Rules of Court requires *any reference* to a matter in the record to be supported by a citation to the volume and page number of the record where the matter appears. (Cal. Rules of Court, rule 8.204(a)(1)(C).) Although mother included citations to the record in the factual portion of her brief, such citations do not cure her failure to cite evidence in the argument section of her brief. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239; *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590, fn. 8.) As a result, we may disregard her arguments.

But even if not forfeited, mother has failed to demonstrate error. Mother assumes the court did not consider evidence that was not specifically addressed in the court's ruling. However, under established rules of appellate procedure, when the record is silent, we presume that the trial court weighed the evidence and that the trial court's order is correct. (*Young v. Rosenthal* (1989) 212 Cal.App.3d 96, 123; *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1362.) The burden of demonstrating error

17

rests on the appellant. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631-632.)

Here, mother has failed to meet her burden to show the court failed to weigh all the evidence at trial. The court expressly stated that it considered "all of the facts and circumstances" bearing on the best interest of the child and the court referred, specifically, to father's domestic violence restraining order, the alleged sexual abuse, and testimony that changing custody would be traumatic for A. There is nothing in the record to indicate the court ignored this evidence or failed to consider the other factors cited by mother. A trial court's failure to discuss every factor in its ruling is not error and does not indicate the court failed to properly discharge its duties. (*LaMusga, supra*, 32 Cal.4th at p. 1093 [court's failure to state on the record consideration of child's interest in stable custodial and emotional ties with custodial parent not error].) Accordingly, we find no abuse of discretion.

V

*Weight of the Evidence*

Mother also claims the court failed to properly weigh the evidence and determine the credibility of the witnesses. In particular, she contends father was not credible and that the court should not have believed his version of the events regarding the alleged sexual abuse.

As discussed, we review a custody and visitation order for abuse of discretion. (*Burgess, supra*, 13 Cal.4th at p. 32.) In evaluating the factual basis for a court's exercise of discretion, broad deference is required. " ' "The trial judge, having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, is best qualified to pass upon and determine the factual issues presented by their testimony." ' [Citation.]" (*Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1163.) It is not our role as the reviewing court to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony. (*Catherine D. v. Dennis B.* (1990)

220 Cal.App.3d 922, 931; accord, *Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 916.) We may reverse only if under all the evidence, viewed most favorably in support of the trial court's action, no reasonable person could have reached the same conclusion. (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

Here, mother has failed to show that the trial court's findings are not supported by substantial evidence or that they exceeded the bounds of reason. She simply refers (without citation) to evidence supportive of her position and invites us to reweigh the evidence and reach a different conclusion. This is beyond the scope of our review. Accordingly, we conclude the trial court did not abuse its discretion in finding that a change in custody was in the child's best interest.

## DISPOSITION

The trial court's order is affirmed. There is no prevailing party for purposes of costs on appeal.


                                             KRAUSE , J.


We concur:


RAYE , P. J.


HOCH , J.


19